UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| W.S. MOLNAR CO. d/b/a SLIPNOT METAL SAFETY FLOORING, <br><br> Plaintiff, <br><br> -against- <br><br> GLOBAL METALS CORPORATION; TRITON STRUCTURAL CONCRETE, INC.; ALLEGHENY CASUALTY COMPANY; and LIBERTY MUTUAL INSURANCE COMPANY <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, W.S. Molnar Co. d/b/a SlipNot Metal Safety Flooring ("SlipNot") by Peckar & Abramson, P.C., its attorneys, for its complaint against defendants, Global Metals Corporation ("Global"), Triton Structural Concrete, Inc. ("Triton"), Allegheny Casualty Company ("Allegheny"), and Liberty Mutual Insurance Company ("Liberty"), alleges as follows:

**Parties**

1. Plaintiff SlipNot is a corporation duly organized and existing under the laws of the State of Michigan with its principal place of business at 2545 Beaufait Street, Detroit, Michigan.

2. On information and belief, defendant Global is a corporation duly organized and existing under the laws of the State of California with its principal place

LAW OFFICES
Peckar & Abramson
A Professional Corporation

of business at 2600 Sweetwater Springs Boulevard, Suite 201, Spring Valley, California.

3. On information and belief, defendant Triton is a corporation duly organized and existing under the laws of the State of California with its principal place of business at 15435 Innovation Drive, Suite 225, San Diego, California.

4. On information and belief, defendant Allegheny is a corporation duly organized and existing under the laws of the State of Pennsylvania with a principal place of business at One Newark Center, 20th Floor, Newark, New Jersey.

5. On information and belief, defendant Liberty is a corporation duly organized and existing under the laws of the State of Massachusetts with a principal place of business at 175 Berkeley Street, Boston, Massachusetts.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 over plaintiff's cause of action. SlipNot's claims are for amounts in excess of the $75,000 jurisdictional minimum and are between the citizens of different states.

7. This Court has personal jurisdiction over all parties.

8. Venue is proper in the Eastern District of New York under 28 U.S.C. §1391(b) because a substantial part of the events which give rise to the action occurred within the Eastern District of New York.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

**Facts Common to All Counts**

9. This complaint relates to a Hurricane Sandy project in the City of New York known as the Phase 3 Beachfront Restoration Project New Prefabricated modular Building Units – Boroughs of Brooklyn, Queens and Staten Island (the "Project").

10. The owner for the Project was and is the City of New York (the "City").

11. The general contractor for the Project was and is Triton.

12. Global was a subcontractor to Triton for certain work required for the Project.

13. On information and belief, Global was engaged (as detailed in the Allegheny Bonds referenced below) to: (a) fabricate, furnish and label all material for the steel stairs, ramps, landings, bridges, platforms, handrails, anchor bolts, and templates, as per project plans, approved show drawings, and in strict accordance with specifications included [sic] addendum #1 an [sic] bulletin #1 in accordance with drawings and specifications prepared by Triton or others; and (b) galvanize and deliver all material for the steel stairs, ramps, landings, bridges, platforms, handrails, anchor bolts, and templates, in accordance with the plans, approved shop drawings, and in strict accordance with specifications including addendum #1 and bulletin #1 in accordance with drawings and specifications prepared by Triton or others.

14. Global obtained two payment bonds from Allegheny related to its work on the Project (the "Allegheny Bonds"). The first payment bond, number 0606890 is dated March 20, 2013 in the principal sum of $1,500,000.00. The second payment bond, number 0606891 is dated March 20, 2013 in the principal sum of $600,000.00.

15. Global is named as the principal under the Allegheny Bonds.

16. Triton obtained payment bond number 24047902 from Liberty dated March 7, 2013 in the principal sum of $105,003,443.02 related to its work on the Project (the "Liberty Bond").

17. Triton is named as the principal under the Liberty Bond.

18. On or about March 21, 2013, Global issued Interim Purchase Order No. 1306 (the "IPO") to SlipNot.

19. Pursuant to the IPO, Global agreed to purchase Grade 2.S.S.SlipNot with coating to be fabricated in accordance with preliminary drawings and information provided by Global and as further detailed in SlipNot Quote No. Sq13-62497 (the "Initial Quote") in exchange for payment to SlipNot in the amount set forth in the Initial Quote (the "Contract Sum").  A copy of the IPO and Initial Quote are attached and incorporated herein as Exhibit 1.

20. Global and Triton directed SlipNot to order or fabricate the necessary material in advance of final drawings being delivered by Global to SlipNot.

21. SlipNot, Global and Triton agreed that upon SlipNot's receipt of the final drawings relating to the Project, a final Purchase Order would be agreed upon and executed by Global and SlipNot.

22. Because of the short time for performance by SlipNot and to ensure timely and full payment to SlipNot, as a condition of SlipNot's agreement to (a) accept the IPO including the immediate pre-ordering of material; and (b) timely fabricate and deliver the requested SlipNot product, SlipNot required that Triton and Global agree to the joint

check payment arrangements and other terms contained in a written agreement between Global, Triton and SlipNot (the "Three-Way Agreement") with an effective date of March 29, 2013. A copy of the Three-Way Agreement is attached and incorporated as Exhibit 2.

23. SlipNot's standard terms and conditions (the "SlipNot Terms") were incorporated into the IPO and Initial Quote, were provided to Global, and are applicable to this Project. The SlipNot Terms are attached and incorporated as Exhibit 3.

24. The IPO, Initial Quote, SlipNot Terms and the Three-Way Agreement are hereinafter collectively referred to as the "SlipNot Contract."

25. After the Three-Way Agreement was signed, SlipNot began performing the SlipNot Contract to the extent possible given that final drawings had not yet been received.

26. SlipNot could not begin work on fabricating parts and applying SlipNot to those parts until it received final drawings.

27. Global's delay in providing the final drawings substantially impacted the cost of performance of the SlipNot Contract and the timing of delivery of the material.

28. The original details and drawings on which SlipNot's Initial Quote was based required only seven (7) types of SlipNot parts (i.e. blanks) consisting mainly of stairs (1 blank), bridges (3 blanks), platforms (2 blanks), and ramps (1 blank).

29. The final drawings provided to SlipNot required five hundred and ninety-eight blanks as opposed to the original seven.

30. At Global's and Triton's direction, SlipNot proceeded with its work at an accelerated pace, and provided all materials required for the Project in accordance with the final drawings and specifications.

31. All materials supplied by SlipNot were received and accepted by Global or Triton or both without objection.

32. All materials supplied by SlipNot have been incorporated into the Project.

33. SlipNot provided sales quotes and invoices that detail the agreed on price for the material supplied, which represents the fair and reasonable value of the material supplied by SlipNot. A copy of those quotes and invoices are attached and incorporated as Exhibit 4.

34. Global and Triton never objected to any of the quotes or invoices.

## COUNT I
### (Breach of Contract – Global)

35. Despite repeated demand for payment by SlipNot, Global has failed to pay the amount due to SlipNot under the SlipNot Contract and any amendments thereto.

36. Global's failure to pay SlipNot is a material breach of the SlipNot Contract and caused SlipNot to incur damages.

37. The outstanding balance due and owing to SlipNot is $240,770.00, with applicable interest thereon.

38. SlipNot has duly performed all terms and conditions of the SlipNot Contract on its part to be performed.

39. By reason of the foregoing, the sum of $240.770.00 is now justly due and owing from Global to SlipNot with applicable interest thereon.

## COUNT II
### (Breach of Contract – Triton and Global)

40. Pursuant to the Three-Way Agreement, SlipNot has presented its invoices to Global and Triton for the additional amounts claimed but in spite of repeated requests has not received payment of the amounts due.

41. Triton has not objected to any of SlipNot's requests for payment.

42. SlipNot has duly performed all the terms and conditions of the Three-Way Agreement on its part to be performed.

43. Triton has materially breached the Three-Way Agreement by refusing or neglecting to pay SlipNot for amounts due.

44. Pursuant to the terms of the Three-Way Agreement, SlipNot is entitled to its reasonable costs of collection, including attorney's fees, if payment is not made within 10 days of its due date.

45. Global and Triton failed to pay SlipNot within 10 days of the due date.

46. By reason thereof, SlipNot is entitled to its reasonable costs of collection, including attorney's fees, in an amount to be determined.

47. By reason of the forgoing, the sum of $240,770.00 is now justly due and owing from Triton and Global to SlipNot, with applicable interest thereon, and reasonable costs of collection including attorney's fees.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

## COUNT III
### (Payment Bond – Allegheny)

48. After repeated demands from SlipNot to Global for payment, on June 8, 2014, SlipNot requested payment from defendant Allegheny of the amount due by a letter sent by certified mail, return receipt requested.

49. SlipNot has not been paid by Global or Allegheny the amount due and owing for materials furnished to the Project.

50. Under the terms of the Allegheny Bonds, Global and Allegheny are bound, jointly and severally, to pay for labor, materials, and equipment furnished for use in the performance of the Project.

51. Under the terms of the Allegheny Bonds, SlipNot is entitled to recover from Allegheny the agreed on or fair and reasonable value of the material furnished by SlipNot to the Project.

52. SlipNot has fully complied with its obligations under the Allegheny Bonds and New York law and is entitled to payment from Allegheny in the absence of payment from Global or Triton.

53. By reason of the foregoing, the sum of $240,770.00 is now justly due and owing from Allegheny to SlipNot with applicable interest thereon.

## COUNT IV
### (Payment Bond – Liberty)

54. After repeated demands from SlipNot to Triton for payment, on June 8, 2014, SlipNot requested payment from defendant Liberty of the amount due by a letter sent by certified mail, return receipt requested.

55. SlipNot has not been paid by Triton or Liberty the amount due and owing for materials furnished to the Project.

56. Under the terms of the Liberty Bond, Triton and Liberty are bound, jointly and severally, to pay for labor, materials, and equipment furnished for use in the performance of the Project.

57. Under the terms of the Liberty Bond, SlipNot is entitled to recover from Liberty the agreed on or fair and reasonable value of the material furnished by SlipNot to the Project.

58. SlipNot has fully complied with its obligations under the Liberty Bond and New York law and is entitled to payment from Liberty in the absence of payment from defendants Triton or Global.

59. By reason of the foregoing, the sum of $240,770.00 is now justly due and owing from Allegheny to SlipNot with applicable interest thereon.

## COUNT V
### (Lien Discharge Bond)

60. On July 2, 2014, pursuant to the Lien Law of the State of New York, SlipNot caused to be duly filed with the City of New York, Department of Design and Construction and the City of New York, Department of Finance, a verified notice of public improvement lien ("Lien") in proper form, which Lien stated that SlipNot claimed a lien in the amount of $240,770.00 on the monies due and to become due to Triton pursuant to its agreement with the City, being the amount owed to plaintiff for the material furnished.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

95061                                9

61. Pursuant to New York's Lien Law, SlipNot duly and timely served a copy of the Lien on all required parties.

62. As of the filing of the Lien, thirty days had not elapsed since the completion and acceptance of the construction of the Project.

63. By reason thereof, plaintiff acquired a valid public improvement lien in the sum of $240,770.00, with appropriate interest thereon.

64. On or about July 7, 2014, pursuant to Lien Law § 21(5), Triton, as contractor and principal, and Liberty, as surety, in order to discharge the Lien, executed a bond (Bond Number 2405437) in the sum of $264,847 (the "Discharge Bond"), conditioned upon the payment of any judgment which might be rendered in an action to enforce the Lien.

65. No other proceeding has been commenced to foreclose the Lien or for recovery on the Discharge Bond of the amount due to plaintiff.

66. By reason thereof, plaintiff is entitled to a judgment of foreclosure against Liberty on the Discharge Bond in the sum of $240,770.00, with applicable interest thereon, and on the contract amounts due and owing from to Triton.

## COUNT VI
**(Quantum Meruit)**

67. The fair and reasonable value of the materials actually furnished by SlipNot for which it has not been paid is the sum of $240,770.00.

68. Defendants Global and Triton received the benefit of SlipNot's customized and proprietary material related to the Project.

69.   By reason thereof, SlipNot is entitled to be compensated by Global and Triton for the fair and reasonable value of the materials actually provided to and accepted by defendants, in the sum of $240,770.00, with applicable interest thereon.

## COUNT VII
### (Promissory Estoppel)

70.   Global and Triton made an actual, clear and definite promise to SlipNot to pay for the material provided by SlipNot, including additional charges arising from the extra work required by the final drawings provided after SlipNot's Initial Quote.

71.   Global and Triton reasonably expected to induce action of a definite and substantial character on the part of SlipNot because they demanded the timely supply of the material, expected the material to be supplied, and agreed to pay the amounts claimed.

72.   Global and Triton induced reliance of that nature, including SlipNot's provision of the material described in the preceding paragraphs.

73.   Global and Triton's promises must be enforced if injustice is to be avoided because SlipNot has provided valuable material to and for the benefit of the defendants without payment in full to plaintiff.

74.   By reason thereof, the sum of $240,770.00 is justly due and owing from Global and Triton to SlipNot with applicable interest thereon.

## COUNT VIII
### (Account Stated)

75. Global and Triton never objected to, or denied the validity of any invoice issued by SlipNot for material requested, provided, and accepted, including those attached and incorporated as Exhibit 4.

76. By reason thereof, an account was stated and the sum of $240,770.00 is justly due and owing to plaintiff from defendants Global and Triton with applicable interest thereon.

### REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court:

a. Enter judgment in its favor against Global and Triton in the sum of $240,770.00 with applicable interest thereon and reasonable costs of collection including attorney's fees;

b. Enter judgment in its favor against Allegheny and Liberty in the sum of $240,770.00 with applicable interest thereon;

c. Order that plaintiff has a valid lien on the monies due or to become due to Triton from the City, and enter a judgment of foreclosure in its favor against Liberty on the Discharge Bond in the sum of $240,770.00 with applicable interest; and

d. Grant plaintiff other relief that the Court deems proper.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands trial by jury in this action of all issues so triable.

Dated: July 24, 2014

PECKAR & ABRAMSON, P.C.
*Attorneys for Plaintiff*


By: _____s/Paul Monte_____
    Paul Monte (PM-5794)
    41 Madison Avenue, 20th Floor
    New York, New York 10010
    (212) 382-0909
    Email: pmonte@pecklaw.com

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

95061

13